THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
v. U. T. GABA.

No. 15,554.   (97 Pac. 435.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Incompetent Testimony Introduced by One Party
—Repetition by the Other Party*. If a party by cross-examination elicits and restores to the record incompetent testimony which, upon his motion, had been stricken out, he is not prejudiced by the repetition of such testimony on redirect examination.

2. CONTRACTS—*Liquidated Damages*. The extent of a possible future loss to be paid in the event of a breach of contract may be agreed upon in advance, where there is difficulty in determining the extent of the loss and the resulting damages are uncertain. In such a case the amount so fixed, if reasonable, will be allowed when the default occurs.

3. —— *Same*. This principle is often applied to contracts for building, and when the sum named is not excessive it is generally held to be liquidated damages and not a penalty.

4. —— *Construction*. The use of the words "forfeiture," "penalty" and "liquidated damages" in such contracts is not controlling, although due weight should be given to such expressions, in connection with other parts of the agreement, the subject-matter, and other facts and circumstances.

5. —— *Transportation—Notice to Carrier of Consequences of Delay—Damages*. Where materials for a building had been delivered to a carrier for transportation, which was unreasonably delayed, and the consignor paid to the contractor, who was the consignee, the amount previously agreed upon as damages for the delay in the completion of such building caused by failure to receive the materials in due time, the carrier will be held liable for the amount so paid, in the absence of evidence of bad faith in making the settlement or that the amount paid was excessive, if properly notified at the time of shipment of the use intended and the consequences of delay.

Error from Cherokee district court; CORB A. MC-NEILL, judge. Opinion filed July 3, 1908. Affirmed.

*W. F. Evans, R. R. Vermilion,* and *H C. Sluss,* for plaintiff in error.

*E. B. Morgan,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The plaintiff, U. T. Gaba, delivered to the defendant railroad company, at Baxter Springs, a lot of porch columns and composition caps consigned to a contractor at Oklahoma City. The agent of the company was informed that the materials were to be furnished by Mr. Gaba for use in a building which was being constructed under a time contract, with a penalty for delay, and prompt shipment was promised by the agent. The columns were sent forward at once, and were received by the contractor within three days. The caps, although included in the same bill of lading, were not delivered in Oklahoma City until thirty-one days afterward, having by mistake been taken to Texas. The company was promptly notified of the shortage, and the plaintiff made diligent efforts to find the property, at an expense to him of $26. In making settlement with the contractor the owner deducted over $300 as damages for delay beyond the time agreed upon for completion of the building, caused by this delay in the transportation of the caps; and the contractor deducted $300 from the bill of the plaintiff, the subcontractor, in accordance with the agreement of the latter, in which he stipulated to pay $10 per day for each day's delay in the construction of the building caused by his failure to deliver the caps promptly. The plaintiff sued to recover his damages from the company, and upon a trial without a jury recovered a judgment for $300. The company alleges error in the rulings upon evidence, and in the measure of damages allowed.

After the plaintiff had testified to his agreement to pay $10 per day for any delay in constructing the building caused by his failure to deliver the materials it was shown that the agreement was in writing, in the possession of the contractor in Oklahoma, and the defendant moved to strike out the parol testimony of its contents. This motion was allowed, but the defend-

28—78 KAN.

ant by cross-examination of the witness elicited the same testimony, as the following excerpt will show:

"Ques. When was it you made that contract with Mr. Lee to furnish these things for the house he was building for Mr. Turner? Ans. I don't just remember the time. I made a good many trips there. If I remember right it was about the first of April.

"Q. How long was you to have to furnish these columns and compo caps? A. There was no designated time in the contract. I was not to delay him in the contract at all. Any delay I made Mr. Lee in his time contract I was to pay $10 per day.

"Q. Was that in this contract? A. Yes, sir.

"Q. Did you have a copy of it? A. No, sir.

"Q. You gave it to Mr. Lee and never kept a copy of it? A. Yes, sir.

"Q. That is about the language of that written contract you believe? A. Yes, sir; something on that order.

"Q. There was no time mentioned in which you was to furnish the columns and compo caps? A. No, sir; not in mine. The time was stated in his contract, but not in mine."

After this testimony had been given the plaintiff, on redirect examination, was permitted over the defendant's objection to testify as follows:

"Ques. Mr. Gaba, what was your contract with Mr. Lee as to forfeiture or penalty, if there was any, if you should delay him on that building? Ans. I had a time contract with Mr. Lee for $10 a day.

"Q. What do you mean by that? A. If I caused him any delay in the building of the building I was to stand a forfeiture of $10 a day."

Motions were duly made to strike out this testimony, which were denied. The defendant was not prejudiced by these rulings, since the contents of the written instrument were already in evidence through the defendant's cross-examination. Having restored the incompetent testimony to the record by its own action, the repetition, although unnecessary, was harmless.

It is argued that the provision to pay a certain sum

per day for the delay referred to was in the nature of a penalty and the amount ought not to have been allowed without proof of the actual damages sustained. As it appeared that the subcontractor actually paid this amount by deduction from his bill, and that the contractor sustained a corresponding loss in his settlement with the owner, the real contention seems to be that proof of actual damages to the owner should have been given before any recovery was allowed to the plaintiff. A delay of thirty days beyond the reasonable time for transportation is not disputed. The settlement of damages caused by this delay in the completion of the building consequent upon the delay in transportation is shown by the evidence. Thus an actual loss to the plaintiff is proved. It was not necessary for him to go further and prove by other evidence that the contractor rightfully insisted upon the terms of the agreement and that the actual damages to the owner were equal to the amount allowed. Having offered evidence of the agreement, the notice to the company, the default of the latter, the delay in the completion of the building resulting therefrom, and the payment to the contractor, the burden was upon the defendant to show bad faith, if any existed, or that the damages were excessive, since the transactions of men in the usual course of business and in the execution of their contracts are presumed to be honest until the contrary appears. (*Guetzkow Brothers Co. v. A. H. Andrews & Co.,* 92 Wis. 214, 66 N. W. 119, 52 L. R. A. 209, 53 Am. St. Rep. 909; *Baughman, Sheriff, v. Penn,* 33 Kan. 504, 6 Pac. 890.)

Damages are allowed as compensation which the law affords to persons whose rights have been invaded; actual damages are for actual losses. The amount of such losses may, however, sometimes be anticipated, and the extent of a possible future loss, to be paid in the event of a breach of contract, may be agreed upon in advance, where there is difficulty in determining the

extent of the loss and the resulting damages are uncertain, if the amount fixed is reasonable. This principle is often applied to contracts for building, and when the sum named is not excessive it is generally held to be liquidated damages and not a penalty. (*Railroad v. Cabinet Co.*, 104 Tenn. 568, 58 S. W. 303, 50 L. R. A. 729, 78 Am. St. Rep. 933; *Monmouth Park Asso. v. Wallis Iron Works*, 55 N. J. Law, 132, 26 Atl. 140, 19 L. R. A. 456, 39 Am. St. Rep. 626; *Hennessy v. Metzger*, 152 Ill. 505, 38 N. E. 1058, 43 Am. St. Rep. 267; *Hall v. Crowley*, 87 Mass. 304, 81 Am. Dec. 745.) The use of the words "penalty," "forfeiture" and "liquidated damages" in such contracts is not controlling, although due weight should be given to such expressions, in connection with other parts of the agreement, the subject-matter, and the other facts and circumstances. (*Degraff, Vrieling & Co. v. Wickham*, 89 Iowa, 720, 52 N. W. 503, 57 N. W. 420; *Jaquith v. Hudson*, 5 Mich. 123.) This view does not conflict with those expressed in *Condon v. Kemper*, 47 Kan. 126, 27 Pac. 829, 13 L. R. A. 671, and is in harmony with the opinion in *Davidson v. Hughes*, 76 Kan. 247, 91 Pac. 913.

The plaintiff, having complied with his agreement and paid the stipulated damages, as we must presume in good faith, could properly look to the company to make up the loss, the company having been notified of the use to be made of the goods and the consequences of delay in shipment. If such notice had not been given a different measure of damages would have been applicable. (*Railroad v. Cabinet Co.*, 104 Tenn. 568, 78 Am. St. Rep. 933, 58 S. W. 303, 50 L. R. A. 729.)

The judgment is affirmed.