(626 P.2d 1206)

No. 51,681

UNIFIED SCHOOL DISTRICT No. 315, THOMAS COUNTY, KANSAS, *Plaintiff-Appellee,* v. NEIL DEWERFF, *Defendant-Appellant.*

Opinion filed April 24, 1981.

*Leon E. Roulier,* of Colby, for appellant.

*H. David Starkey,* of Colby, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

PRAGER, J.: The sole issue involved on this appeal is whether a provision in a teacher's employment contract is enforceable as a valid liquidated damages clause or is void as an illegal penalty. The facts are not disputed. Defendant, Neil DeWerff, had been employed by the plaintiff, a unified school district, for many years as a teacher and basketball coach. On June 28, 1978, defendant gave notice of his resignation to the school district. He was informed that his resignation would be accepted upon the payment of $400 as required by the negotiated teachers employment contract. Defendant refused to make the payment and plaintiff sued.

The contract provision in question provided:

"BOARD OF EDUCATION USD 315
"PROPOSAL: PENALTY FOR BREAKING CONTRACTS:
"1. It is the intent of this Board to negotiate an agreement that will tend to make teachers as responsible for the compliance to their contracts as they will expect the Board of Education to be.

"2. It is proposed that for faculty members currently on the staff, they be declared under contract for the purpose of this proposal on and after April 15 of the current year; unless an agreement has been reached between the Teachers' Association and the Board of Education mutually to change this date.

"3. That in all cases where a teacher who is under contract fails to honor the full term of his or her contract, a lump sum of $400.00 be collected between contract acceptance and August 1 if contract is broken. After August 1 a penalty of $75.00 will be charged for each full or part of a month remaining on his or her contract.

"4. The Board reserves the right to waive the provisions of this penalty policy."

The board's proposal was accepted by the teachers and included in the negotiated contract.

The trial court held an evidentiary hearing on two basic factual issues:

(1) Whether the damage amount stipulated in the contractual provision is a reasonable amount, and

(2) Whether the board has applied the contractual provisions impartially, equitably, and fairly.

It found the contractual provision to be a valid liquidated damages clause, the agreed amount of $400 to be reasonable, and that the board had applied the provision impartially and fairly in the past. Accordingly, judgment was rendered for plaintiff and defendant appeals. In support of his position that the contract provision is an illegal penalty, defendant emphasizes the following factors: (1) The language in the provision describes it as a "penalty"; (2) the stated purpose of the clause is to compel performance rather than to estimate damages; (3) the provision is coercive because plaintiff had the ability to waive its enforcement; and (4) the stipulated amount is binding regardless of the actual amount of damages incurred.

It is well settled that parties to a contract may stipulate to the amount of damages for breach of the contract, if the stipulation is determined to be a liquidated damages clause rather than a penalty. A stipulation for damages upon a future breach of contract is valid as a liquidated damages clause if the set amount is determined to be reasonable and the amount of damages is difficult to ascertain. *White Lakes Shopping Center, Inc., v. Jefferson Standard Life Ins. Co.,* 208 Kan. 121, 126-28, 490 P.2d 609 (1971); *Beck v. Megli,* 153 Kan. 721, 726, 114 P.2d 305 (1941); *Railroad Co. v. Gaba,* 78 Kan. 432, 435-36, 97 Pac. 435 (1908).

The distinction between a provision for liquidated damages and one for a penalty is that a penalty is to secure performance, while a liquidated damages provision is for payment of a sum in lieu of performance. *Erickson v. O'Leary,* 127 Kan. 12, 14, 273 Pac. 414 (1929); see also *Gregory v. Nelson,* 147 Kan. 682, 686, 78 P.2d 889 (1938); *Kuter v. Bank,* 96 Kan. 485, 488, 152 Pac. 662 (1915). Liquidated damages provisions, if otherwise valid, are generally enforceable in employment contracts for the employee's wrongful termination of employment. 53 Am. Jur. 2d, Master & Servant § 48, p. 122; Annot., 61 A.L.R.2d 1008, 1019.

The use of the term "penalty" throughout the provision does not, as a matter of law, defeat the trial court's finding that the provision was, in fact, a liquidated damages clause. The Supreme Court in *Beck v. Megli,* 153 Kan. at 726, explains:

"In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts must look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms 'penalty' or 'liquidated damages' in the instrument is of evidentiary value only. It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. [Citations omitted.] The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damage resulting from default would not be easily and readily determinable."

See also *Railroad Co. v. Gaba,* 78 Kan. 432, Syl. ¶ 4; *Condon v. Kemper,* 47 Kan. 126, 129, 27 Pac. 829 (1891).

As noted, the characteristic of a penalty is that it is designed to secure performance rather than to estimate reasonable damages in case of breach. The present case is complicated by the fact that the provision in question states that its purpose is to "make teachers . . . responsible for the compliance to their contracts." However, the stated purpose of the provision is not necessarily controlling where the stipulated sum is reasonable and the amount of actual damages for breach would be difficult to determine. Here the evidence established that the provision in question was drafted by nonlawyer negotiators who were not trained in the intricacies of the law. It was further undisputed

that such provisions are frequently included in employment contracts negotiated between school boards and teachers organizations. The affidavit of C. Gordon Nelson, Director of Research for the Kansas Association of School Boards, states that, for the school year 1978-79, 39 school districts had contracts containing some form of liquidated damages provision applicable on release of a teacher from his contractual obligations. The damages provided in those contracts are comparable in amount to that provided for in the contract presently before us for consideration.

Generally, a contract provision will be considered a penalty where there is no attempt to calculate the amount of actual damages that might be sustained in case of breach. *Gregory v. Nelson,* 147 Kan. at 685. An indication of this lack of calculation is deemed present when the amount of stipulated damages is the same for a total or partial breach, or for breach of minor or major contract provisions. *Kansas City v. Industrial Gas Co.,* 138 Kan. 755, 762, 28 P.2d 968 (1934). In the present case, the contract provision required payment of a greater sum as the school year commenced and progressed. There was trial testimony that it became increasingly difficult, after the April 15 contract deadline, to procure qualified teachers. The terms of the contract, when coupled with the evidence, suggest that there was indeed an attempt to calculate the amount of damages that might result from the teacher's breach. The stated purpose of the provision to secure contract performance is not, in itself, sufficient to render it an unenforceable penalty.

It should also be noted that the school district has a statutory inducement for teacher performance of employment contracts. K.S.A. 72-5412 provides for the suspension of the teacher's certificate where he accepts employment with another school or school board without having first been released from a prior contract. See *Bowbells Pub. Sch. Dist. No. 14 v. Walker,* 231 N.W.2d 173, 177 (N.D. 1975) (statutory suspension for breach weakens argument that provision was to insure performance).

Defendant's claim that the provision is coercive is based on the waiver provision which allowed discretionary enforcement by plaintiff. Under the law of this state, a valid liquidated damages clause cannot be the result of compulsion or an adhesion contract. *White Lakes Shopping Center, Inc., v. Jefferson Standard Life Ins. Co.,* 208 Kan. at 126. There is no requirement that enforcement of

a liquidated damages provision be mandatory. Moreover, in accordance with the trial court's finding of impartial enforcement, there was testimony that the provision was enforced in all cases where the teacher voluntarily broke the contract. Enforcement was waived where the teacher was forced to resign for health reasons or other circumstances beyond his control. The waiver provision in paragraph four does not require a finding that the provision was a penalty rather than a liquidated damages clause.

A valid liquidated damages clause must be a reasonable calculation of damages difficult to establish with certainty. Where actual damages are readily ascertainable, a provision purporting to be a liquidated damages clause will be construed as a penalty, with the injured party recovering only those damages established by proof. *White Lakes Shopping Center, Inc., v. Jefferson Standard Life Ins. Co.,* 208 Kan. at 125-27; *Gregory v. Nelson,* 147 Kan. at 683-684; *Condon v. Kemper,* 47 Kan. at 130. At trial, the district's school superintendent, Dr. Douglas Christensen, testified to the actual expenses incurred in advertising for defendant's vacancy. He testified that substantial man-hours were spent recruiting, interviewing, and hiring. Teachers were shuffled as a result of defendant's resignation when the district was unable to find an exact replacement. He testified that the time spent interviewing and hiring took time away from other activities, and that budget and curriculum preparation suffered as a result. He also testified that it was extremely difficult to find qualified replacements at such a late date, particularly for a teacher-coach position such as that vacated by defendant.

The uncertainty of damages resulting from a teacher's breach of an employment contract was recognized in *Bowbells Pub. Sch. Dist. No. 14 v. Walker,* 231 N.W.2d at 176. Upholding a liquidated damages provision in a teacher's employment contract, the court stressed the injury to the public and the inability to accurately assess damages for that injury:

"[W]e cannot ignore the interruption to the school system and the resultant debilitating effect such interruption has upon the learning process of students in the school system. The possibility that the replacement teacher who was obtained may be less experienced or less qualified and, thus, a less effective instructor must also be considered in the assessment of damages. It would not be possible at the time of contracting to foresee all these elements of damage that may occur. Even if known, it would be extremely difficult to evaluate these damages on a monetary basis. These losses to the public are no less the proper subject of a liquidated-

damage provision than are the losses sustained by the public in delay-of-performance situations. In either case, the damage to the public is real, although most difficult to evaluate. Such damages are not legally compensable but constitute a public injury which the school district was entitled to consider."

Kansas has recognized that the protection of the public interest is a proper consideration in determining the validity of a liquidated damages provision. See, for example, *Kansas City v. Industrial Gas Co.,* 138 Kan. at 763. The legislature has recognized the great public interest in teachers employment contracts by the statutes enacted to regulate the professional negotiations of teachers contracts. (K.S.A. 72-5410 *et seq.*). In this state, teachers are recognized as true professionals, engaged in an important public service. Professional agreements, negotiated in accordance with statutory procedures, should be enforced, if reasonably possible to do so. Here, the school district suffered real but unascertainable damages. There was no challenge to the finding that the amount of damages stipulated was reasonable and not excessive. The requirements of a valid liquidated damages clause—that the sum be reasonable and the actual damages be difficult to ascertain—have been met by the provision in question. The district court's judgment that the provision constituted an enforceable liquidated damages clause is affirmed.

ABBOTT, J.: I dissent. I do not disagree with the law cited by the majority, but I would reach a result contrary to that reached by the majority.

The majority recognize the basic rules of law that the purpose of a penalty provision is to secure performance, and that when the parties call a contract clause a penalty provision, that fact should be given weight and accepted as controlling unless the facts and circumstances compel a contrary holding. The majority then observe that 39 other school districts have *liquidated damage* provisions in their contracts. They cite a North Dakota case that considered a *liquidated damage* clause, then concluded that what the parties here really meant was to provide for liquidated damages in lieu of performance, despite the parties' use of the title PENALTY FOR BREAKING CONTRACT and their expressed purpose of securing performance of the contract. In addition, the school district made written demand on defendant for a penalty charge before releasing him from his contract.

The majority emphasize the fact that the parties are not lawyers

and were not represented by counsel. Although not stated in their opinion, I must conclude they then decided that the parties intended to provide for liquidated damages in lieu of performance, but were incapable of expressing that intent by using plain English; or, if a lawyer had explained to them that a penalty provision is void as against public policy, they would have ended up negotiating a liquidated damage provision using the same sum for liquidated damages that they fixed as a penalty. The latter amounts to making a contract for the parties, something appellate courts are precluded from doing.

There are two reasons why I cannot accept placing a different construction on the words used to express what I consider to be a clearly stated purpose of what the parties to the contract intended as a penalty provision. First, as the majority note, the teachers are professionals who, along with the other party to this action (the school board), are charged with the responsibility of teaching our youth how to express themselves, both orally and in writing. The language the parties chose to use in that portion of the contract in dispute is simple, the stated purpose is clear and concise: "to make teachers as responsible for the compliance to their contracts as they will expect the [school board] to be." A lawyer drawing up a penalty provision would have been hard put to express that intent any better than by using large, boldfaced type stating PENALTY FOR BREAKING CONTRACT and following it with the language used by the parties here. Admittedly, a lawyer could have expressed in clear terms the intent to provide for liquidated damages, but I suggest that to do so, very few of the words that the parties used in the caption and paragraph one of the contract would have been used.

Second, I am unwilling to accept two rules for interpreting contracts in Kansas; i.e., one wherein lawyers are involved, and one wherein they are not. Contracts should always be interpreted to determine the intent of the parties to the agreement; and when that intent is clear from the instrument, courts should not speculate as to what would have occurred had the parties known they could not do what they clearly expressed an intent to do. Although the parties could contract for liquidated damages pursuant to the rules set forth in the majority opinion, they did not do so, and I would reverse and remand with directions to enter judgment for the defendant.