**In re Peter J. WHITE a/k/a Pufferbellies and Jeanne Marie White, Debtors.**

**Bankruptcy No. 87–10548–JNG.**

United States Bankruptcy Court, D. Massachusetts (Boston).

July 1, 1988.

---

Louis S. Robin, Foley Hoag & Eliot, Boston, Mass., for creditor—Bank Five.

Christopher W. Parker, Hinckley Allen Tobin & Silverstein, Boston, Mass., for debtors.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

On or about November 13, 1987, Bank Five for Savings ("Bank Five"), a secured creditor, filed three claims against the Debtors in case nos. 87–10459 and 87–10550, as well as case no. 87–10548. Bank Five recently withdrew, without prejudice, the claims filed in case nos. 87–10549 and 87–1550. Bank Five claims it is owed, at least as of November 13, 1987, $2,179,360. The Debtors and the Creditors' Committee object to the claim in so far as it includes amounts due for late charges and default interest. They also object to the amount sought for attorneys' fees by Bank Five. The reasonableness of the attorneys' fees will be determined by the Court at a later time.

## FACTS

The facts are essentially undisputed and are set forth in the joint pre-trial memorandum submitted to the Court by the parties. The Court has drawn liberally from this document.

The Debtors, husband and wife, reside at 18 Wykeham Road in Newton, Massachusetts. They own land and buildings located at 215–227 Needham Street in Newton,[1] as well as property on River Street and Wykeham Road in Newton. Peter J. White, Inc., the Debtor corporation in Chapter 11 case no. 87–10549–JNG operates a restaurant known as "Pufferbellies" at the Needham Street property.

The Debtors also own the land and buildings at 280 Merrimack Street in Meuthen, Massachusetts. 280 Merrimack St., Inc.,

the Debtor corporation in Chapter 11 Case No. 87–10550–JNG, operates a restaurant/function facility there which does business as "Vanderbilts."

On May 18, 1984, Rosario J. White and Peter J. White executed and delivered a promissory note to Bank Five in the principal amount of $65,000. As of November 13, 1987, $62,023.97 was due and owing to Bank Five. The Debtors do not object to this part of Bank five's claim. Peter J. White admits that he is liable for the full amount stated, plus interest accrued since November 13, 1987.

On July 27, 1984, the Debtors executed and delivered a promissory note in the principal amount of $600,000 payable to Bank Five. The 1984 note is secured by

(i) A (junior) Real Estate Mortgage and Security Agreement for 221–225 Needham Street, Newton, Massachusetts, and the machinery and equipment therein, executed by Peter J. White and Jeanne M. White as Trustees of the 227 Needham Street Realty Trust (the "Newton Mortgage");

(ii) A (first) Real Estate Mortgage and Security Agreement for 280 Merrimack Street, Methuen, Massachusetts, and the machinery and equipment therein executed by Peter J. and Jeanne M. White, individually (the "Methuen Mortgage");

(iii) An Assignment of Lease and Rentals for the Methuen Real Property executed by Peter J. and Jeanne M. White, individually.

The 1984 Note provides for an interest rate of 14.25% per year and a 19.25% "default" interest rate. The Methuen Mortgage provides that "[i]n the event of any default in the payment of any installment of the Note secured hereby which shall continue for fifteen (15) days, a delinquency charge of four (4%) percentum of such installment shall, at the option of the Holder, become due and payable in addition to amounts otherwise due." The Methuen Mortgage also provides for the payment of legal fees and costs.

---

1. While this memorandum was in draft, the Court on June 8, 1988, entered an order confirming the sale of this property for $4.5 million.

On July 25, 1985, Peter J. White and Jeanne M. White, as Trustees of the 227 Needham Street Realty Trust, and Peter J. White, as Trustee of the Peter J. White Realty Trust, jointly and severally, executed and delivered to Bank Five a second promissory note in the original principal amount of $1,275,000. On the same day, the Debtors, in their individual capacities, personally guaranteed all obligations under the 1985 Note. The 1985 Note is secured by

(i) A (first) Real Estate Mortgage and Security agreement for 221–225 Needham Street, Newton, Massachusetts and the machinery and equipment therein executed by Peter and Jeanne M. White as trustee of 227 Needham Street Realty Trust and Peter J. White as trustee of the Peter J. White Realty Trust;

(ii) An Assignment of Lease and Rentals for 221–225 Needham Street, 19 River Street, and 18 Wykeham Street, Newton, Massachusetts executed by Peter J. and Jeanne M. White as trustees of the 227 Needham Street Realty Trust and Peter J. White as trustee of the Peter J. White Realty Trust; and

(iii) A Real Estate Mortgage and Security Agreement for 280 Merrimack Street, Methuen, Massachusetts, and the machinery and equipment therein executed by Peter J. White, individually (the "Methuen Mortgage").

The 1985 Note provides for an interest rate of 13% per year and a "default" interest rate of 18% per year. The mortgage also provides that "[i]n the event of any default in the payment of any installment of the Note secured hereby which shall continue for ten (10) days, a delinquency charge of five (5%) percentum of such installment shall, at the option of the Holder, become due and payable in addition to amounts otherwise due."

The guaranty executed by the Debtors in conjunction with the 1985 note also provides for the payment of "all costs of collection and reasonable attorneys' fees incurred by the Bank in connection with the enforcement of its rights."

Bank Five received the following payments on account of the 1984 and 1985 Notes prior to the commencement of the Debtors' Chapter 11 proceedings:

### 1984 Note

| Date Due | Date Received |
| --- | --- |
| August 20, 1984 | September 18, 1984 |
| September 20, 1984 | October 16, 1984 |
| October 20, 1984 | November 11, 1984 |
| November 20, 1984 | January 15, 1985 |
| December 20, 1984 | February 25, 1985 |
| January 20, 1985 | March 4, 1985 |
| February 20, 1985 | March 21, 1985 |
| March 20, 1985 | April 30, 1985 |
| April 20, 1985 | May 31, 1985 |
| May 20, 1985 | July 23, 1985 |
| June 20, 1985 | July 23, 1985 |
| July 20, 1985 | July 31, 1985 |
| August 20, 1985 | August 14, 1985 |
| September 20, 1985 | October 16, 1985 |
| October 20, 1985 | November 5, 1985 |
| November 20, 1985 | December 23, 1985 |
| December 20, 1985 | February 8, 1986 |
| February 20, 1986 | March 17, 1986 |
| March 20, 1986 | May 6, 1986 |
| April 20, 1986 | June 30, 1986 |
| May 20, 1986 | June 30, 1986 |
| June 20, 1986 | June 30, 1986 |
| July 20, 1986 | June 30, 1986 |
| August 20, 1986 | June 30, 1986 |
| September 20, 1986 | October 29, 1986 |
| October 20, 1986 | November 26, 1986 |

This schedule reflects the fact that the Debtors made only five of 26 payments before or within the 15 day grace period.

### 1985 Note

| Date Due | Date Received |
| --- | --- |
| August 25, 1985 | August 14, 1985 |
| September 25, 1985 | October 31, 1985 |
| October 25, 1985 | November 8, 1985 |
| November 25, 1985 | December 23, 1985 |
| December 25, 1985 | January 21, 1986 |
| January 25, 1986 | February 28, 1986 |
| February 25, 1986 | March 3, 1986 |
| March 25, 1986 | May 6, 1986 |
| April 25, 1986 | June 30, 1986 |
| May 25, 1986 | June 30, 1986 |
| June 25, 1986 | June 30, 1986 |
| July 25, 1986 | June 30, 1986 |
| September 25, 1986 | October 29, 1986 |
| October 25, 1986 | November 26, 1986 |

The Debtors made only four of 14 payments before or within the 10 day grace period applicable to the 1985 note.

For the purposes of the allowance of interest, fees, costs and charges pursuant to 11 U.S.C. § 506(b), the claims of Bank

Five under the 1984 Note and the 1985 Note are fully secured.

The Debtors dispute Bank Five's claim and submit that interest at the contract rate gives Bank Five the full benefit of its bargain. Accordingly, the Debtors and Bank Five calculate the totals due under the notes as follows:

| | Bank Five | Debtors |
|---|---|---|
| **1984 Note** | | |
| Principal balance as of 3/3/88 | $ 571,534.52 | $ 568,229.20 |
| Interest accrued as of 3/3/88 | | |
| 14.25% rate | | $ 75,896.48 |
| 19.25% | $ 111,277.79 | |
| Late charges as of 3/3/88 | $ 3,402.96 | |
| Total | $686,215.27 | $644,125.68 |
| Per Diem | $ 305.61 | $ 224.92 |
| **1985 Note** | | |
| Principal balance as of 3/3/88 | $1,214,202.81 | $1,201,814.59 |
| Interest accrued as of 3/3/88 | | |
| 13% rate | | $ 172,727.54 |
| 18% rate | $ 267,479.54 | |
| Late charges as of 3/3/88 | $ 9,116.25 | |
| Less Escrow Balance | ( $ 267.50) | ( $ 267.50) |
| Total | $1,490,531.10 | $1,374,274.63 |
| Per Diem | $ 607.10 | $ 433.99 |

The principal balances, on the foregoing schedules of liabilities according to Bank Five and the Debtors, differ because when an installment is received when there is a nondefault rate in effect, part of the installment is applied to interest, and the balance to principal. However, when a default rate is in effect, the installment received covers only interest, and there is no balance to be applied toward principal.

Both schedules reflect payments received by Bank Five after the commencement of the proceeding of at least $70,000.

## DISCUSSION

The Debtors advance the same arguments and cite the same cases with respect to their objection to Bank Five's claim as they do with respect to the claim of Wedgestone Realty Investors Trust ("Wedgestone"). Accordingly, the Court does not intend to repeat its analysis of the case law set forth in detail in the Wedgestone opinion. *See In re Peter J. White*, No. 87–548, slip op. (Bankr.D.Mass. July 1, 1988). Briefly, the Debtors urge the Court to engage in a liquidated damages analysis. They argue that the default rates of interest and late charges under the 1984 and 1985 notes are unreasonable. Additionally, they state that Bank Five has offered no hard factual evidence of its monetary damages; rather it has merely submitted, in the Debtors view, a statement of purposes for imposing default interest rates and late charges.

Bank Five correctly identifies the respective burdens of proof applicable to proofs of claim.

A proof of claim constitutes prima facia evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Bankruptcy Rule 3001(f); *L. King, 3 Collier on Bankruptcy*, ¶ 502.01, at 502–16 (15th ed. Supp.1984). When an objection to the claim is made the objecting party carries the burden of going forward with evidence showing facts tending to defeat the claim but not the burden of ultimate persuasion. *Id.* at 502–17. The burden of persuasion always remains on the claimant and, therefore, once there is evidence as to the invalidity of the claim the burden rests on the claimant to introduce rebutting evidence. *Id.* at 502–18. *In re Nantucket Aircraft Maintenance Co.*, 54 B.R. 86, 88 (Bankr.D.Mass.1985). *See also* 3 *Collier on Bankruptcy* ¶ 502.01 at 502–17 (15th ed. 1988).

It also correctly points out that the only evidence presented at the March 3, 1988 trial concerning Bank Five's claim was the affidavit of Edward V. Casavant ("Casavant") which set forth *inter alia* several reasons why the Court could find the default interest rates and late charges imposed by Bank Five under the notes in question are reasonable. Accordingly, Bank Five argues that the prima facie effect of the Bank's proof of claim compels its allowance in full.

In addition to this argument, Bank Five maintains that the default interest and late payment charges are reasonable and courts confronted with similar provisions have allowed default rates. This Court agrees.

The default interest and late charge provisions pass the "liquidated damages" test. The Casavant affidavit, which is criticized but unrebutted by the Debtors, establishes that the default interest and late charge provisions compensate Bank Five for administrative expenses and inconvenience in processing and monitoring untimely payments. Additionally, it is obvious, at least to this Court, that late and missing payments disrupt the orderly conduct of bank transactions. The Court has no difficulty concluding that the rates and charges applied by Bank Five represent a reasonable estimate of fair compensation for breach of the loan agreements. As Bank Five also notes the Debtor introduced no evidence that the rates and charges were inordinately high or inconsistent with rates applicable in the Boston area. In view of the fact that default interest rates and late charges are estimates of actual damages and that, as Bank Five recognizes, it is impractical to calculate the exact dollar amount of injury, this Court will not require evidence of actual harm. The default interest rates and charges sought by Bank Five are neither unconscionable nor violative of public policy.

The Court does not share the Debtors view that contracts—a promissory note is no more and no less—can be cavalierly treated just because there is a bankruptcy filing. As Bank Five recognizes the Debtors, who are sophisticated borrowers, were under no compulsion to accept the terms of the notes. Particularly in the case of solvent debtors, this Court is not in the least inclined to upset the *reasonable* expectations of lenders such as Bank Five.

To the extent that the Debtors argue that they intend to file a Chapter 11 plan that will cure all defaults under the 1984 and 1985 notes, the Court will consider issues raised by 11 U.S.C. § 1124 when and if the Debtors actually do file a plan.

In accordance with the foregoing, the memoranda and arguments of counsel, the Court hereby allows Bank Five's claim for principal, interest, default interest and late charges as set forth in the 1984 and 1985 notes. Bank Five is hereby ordered to file a fee application within three weeks of the date of this order. The Court will hear Bank Five's fee application in conjunction with that of Wedgestone on August 4, 1988 at 1:00 P.M. and will issue a final order at that time.

So ordered.