Watts Building Corporation ("Watts") and Schoel, Ogle, and Benton, a partnership, entered into a lease agreement, wherein Schoel, Ogle, and Benton agreed to lease office space from Watts for a term beginning February 13, 1986, and ending January 31, 1989. On November 17, 1988, the lease was extended for two years beginning February 1, 1989, and ending January 31, 1991. The monthly rent amount under the agreement was $4,949.00, due on the first day of each month.
Schoel, Ogle, and Benton paid the rent through April 1990, but abandoned the leased premises prior to May 1, 1990. On May 15, 1990, an attorney for Watts sent a letter to Schoel, Ogle, and Benton, stating, in part:
 "Your lease provides, in paragraph 17, 'Default and Other Terminable Clauses,' that upon the failure to make payment of the rent when due 'the lessor may, at its election, terminate this lease at any time, by giving three days' written notice to the lessee of the lessor's election to so terminate.' On your failure to make payment of the rent due May 1, 1990, lessor has elected to terminate your lease as so provided in your lease.
 "Paragraph 19 of your lease, 'Acceleration of Maturity,' provides: 'Upon the termination of this lease . . . the rents for the entire rental period . . . shall be and become immediately due and payable. . . .' According to our calculations, there is a sum of $44,541.00 due, plus 'all costs of collecting the same, including a reasonable attorney's fee,' as provided in paragraph 13 of your lease. *Page 834 
 "As provided in paragraph 17 of your lease, you are hereby given notice that your lease shall be deemed terminated after three days from the date hereof."
On July 25, 1990, Watts sued Schoel, Ogle, Benton, Gentle, and Centeno (formerly known as Schoel, Ogle, and Benton and hereinafter referred to as "Schoel"), alleging breach of the lease agreement and seeking to recover the $44,541 balance due under the agreement, $14,847 in attorney fees, and interest and costs. On May 8, 1991, the trial court entered an order, stating, in part:
 "ONE: The Court finds that the amount of rent due by the Defendant to the Plaintiff, which sum has not been paid, for the term of May 1, 1990, through January 31, 1991, is $44,541, plus interest and reasonable attorney fees as may be determined and fixed by the Court on a final hearing.
 "TWO: The defendant is entitled to set off in mitigation of the sums found due in paragraph ONE hereof savings realized by the Plaintiff for services and costs thereof required under the lease as amended as a direct result of the Defendant's vacating the leased premises. The ascertainment and fixing of such items of service and cost are reserved by the Court for a future hearing."
On July 2, 1991, after an ore tenus hearing, the trial court entered a judgment in favor of Watts in the amount of $33,850.95. Following the denial of the post-judgment motions, Watts appealed and Schoel cross-appealed.
Watts argues that Schoel is not entitled to the set-off against the rent due under the remaining term of the lease, because it voluntarily vacated the leased premises. Schoel alleges that Watts mitigated its damages following the termination of the lease; it argues that Watts cannot mitigate its damages and then collect the rent due under the remaining term of the lease. In its cross-appeal, Schoel argues that Watts terminated the lease and seized possession of the premises to the exclusion of Schoel and argues that, therefore, Watts is not entitled to collect the rent due under the remaining term of the lease.
Initially, we note that the predominant purpose of the May 15 letter sent to Schoel was to give notice of default and the acceleration of the rent payments. We hold, therefore, in regard to Schoel's cross-appeal, that Watts is entitled to collect the rent due under the remaining term of the lease, subject to Watts's mitigation of its damages.
This Court has held that a party is obligated to mitigate its damages only if the damages are foreseeable and if the effort to avoid the damages will not entail undue risk. Gradco, Inc.v. St. Clair County Board of Education, 477 So.2d 365 (Ala. 1985). This Court, however, has never addressed the question whether a tenant, who abandons leased premises prior to the expiration of the lease, is entitled to deduct from the rents due under the remaining term of the lease any savings realized by the landlord by not having to provide services under the lease, such as heating and air conditioning, cleaning and janitorial service, electric current for lighting and office operations, passenger elevator service, and restrooms and toilet supplies.
In Schneiker v. Gordon, 732 P.2d 603 (Colo. 1987), the Supreme Court of Colorado, in determining the measure of damages in an action for breach of a lease agreement where a tenant ceased making rental payments and abandoned the leased premises prior to the expiration of a lease, stated:
 "The measure of damages is the amount it takes to place the landlord in the position he would have occupied had the breach not occurred, taking into account the landlord's duty to mitigate. Usually this will be the difference between the rent reserved in the lease and the reasonable value of the premises for the duration of the term of the lease, plus any other consequential damages caused by the breach. However, if the landlord is unable to secure a substitute tenant after making reasonable efforts to do so or if the premises have been rendered unmarketable, the landlord is *Page 835 
entitled to an amount equal to the full amount of rent reserved in the lease, plus any other consequential damages. If the landlord has avoided any cost by not having to perform, that cost should be deducted from his recovery in order to place him in the position he would have occupied had the tenant performed."
732 P.2d at 612 (citations omitted). We agree with the Colorado Supreme Court that any cost avoided by a landlord by not having to perform under a lease should be deducted from his recovery. Applying that rule to the instant case, we hold that the trial court correctly found that Schoel is entitled to a set-off against the rent due under the remaining term of the lease the costs avoided by Watts in not having to perform.
Under the ore tenus rule, the trial court's findings of fact are presumed correct and this Court will not reverse a judgment based upon those findings unless, after considering all the evidence and all reasonable inferences that can be logically drawn therefrom, this Court determines that the judgment is plainly and palpably wrong. Ex parte Geneva City Board ofEducation, 575 So.2d 1114 (Ala. 1990).
The trial court had before it the affidavit of Julie L. Williams, who stated that she had personal knowledge of the operating costs of the Watts building and who established the value of savings realized by Watts from May 1990 through January 1991 by not having to provide services under the lease agreement, and the trial court heard testimony from attorneys who testified as to the reasonableness of attorney fees. After the ore tenus hearing, the trial court awarded $33,850.95 to Watts. Because there is sufficient evidence in the record to support the trial court's judgment, the judgment is not plainly and palpably wrong. The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.