(86 P.3d 543)
No. 90,509

IPC Retail Properties, L.L.C., *Appellee,* v. Oriental Gardens, Inc., and Chung M. Wang, *Appellees,* and Tony W. Ho, *Appellant.*

—

Opinion filed March 12, 2004.

*Patrick B. Hughes*, of Adams & Jones, Chartered, of Wichita, for appellant Tony W. Ho.

*Jeff Kennedy* and *Teresa Mah,* of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee IPC Retail Properties, L.L.C.

No appearances by appellees Oriental Gardens, Inc., and Chung M. Wang.

Before GREEN, P.J., LEWIS, J., and JOHN J. BUKATY, JR., District Judge, assigned.

GREEN, J.: Tony Ho appeals from a bench trial judgment awarding past and accelerated future rents to IPC Retail Properties, L.L.C. (IPC). The case stems from the termination of a commercial lease for nonpayment of rent between IPC as landlord and Oriental Gardens, Inc., as tenant. As a guarantor on the lease, Ho was liable for the judgment amount. On appeal, Ho first argues that his guaranty never became effective because his spouse did not sign the guaranty. We find that the clear language of the lease did not require Ho's spouse to sign the guaranty. As a result, the guaranty was effective. Next, Ho argues that termination of the lease and acceleration of rent are mutually exclusive remedies under the language of the lease. We disagree. The clear language of the lease allows accelerated rent to be a remedy additional to termination of the lease.

Ho next sets forth several reasons as to why the accelerated rent provision was unenforceable. Ho contends that a landlord cannot both terminate a lease and accelerate rental payments. Although Kansas case law is unclear on this issue, the facts of this case indicate that IPC treated Oriental Gardens' refusal to pay rent as an anticipatory breach. As a result, IPC was entitled to damages for the remainder of the lease term. Ho also contends that the acceleration provision was unenforceable because it was in the nature of a penalty. We agree. Because the accelerated rent provision applied to every breach of the contract, major or minor, we find that it was not a reasonable estimate of damages and, therefore, was not a valid liquidated damages clause. Moreover, the acceleration provision was not in the nature of a liquidated damages provision because it did not constitute a settlement of anticipated damages. As a result, we find that the acceleration clause constituted

an unenforceable penalty. Nevertheless, IPC had a right to collect the remaining rent due under the lease as damages. Therefore, we reverse and remand to the trial court for further consideration on the issue of damages.

*Facts*

During August 2000, IPC, as landlord, and J&T, Inc., as tenant, entered into a 5-year commercial lease agreement for space to operate a Chinese restaurant in Wichita. Chung Wang and Ho were principals in J&T, Inc., and personally executed a guaranty for the performance of all obligations under the lease, including the rental payments. During November 2000, Ho and Wang executed a first amendment to the lease which recognized that J&T, Inc., had changed its name to Oriental Gardens, Inc. This amendment ratified the August 2000 lease and declared that the terms of the lease that were unchanged by the amendment would remain in full force and effect. The amendment provided that the lease would commence on December 1, 2000, and would expire on November 30, 2005.

During February 2002, IPC notified Oriental Gardens that it was in default for nonpayment of rent. The notification letter stated that Oriental Gardens had 10 days to cure the default; otherwise, IPC would elect to terminate the lease. The letter further provided that Oriental Gardens would be responsible for all past, present, or future sums due under the lease. Oriental Gardens subsequently paid the amount in default, although this payment was made outside of the 10-day time requirement. During November 2002, Oriental Gardens stopped paying rent again, and IPC sent another notification letter similar to the February 2002 correspondence. This time, Oriental Gardens was notified that if the amount in default was not received within 10 days, IPC "elects to terminate your Lease effective December 27, 2002." In addition, the letter stated: "[Y]our duty to pay rent and other charges under the term of the Lease survives the termination of the Lease and suit shall be brought for all sums due under the Lease whether past, present or future to the end of the Lease term."

After this default was not cured, IPC filed a petition against Oriental Gardens, Wang, and Ho, seeking to enforce its rights under the lease and guaranty. IPC requested that the trial court find that the lease had been terminated; that the trial court award a money judgment equal to all past, present, and future rent payments under the lease; and that the trial court award attorney fees and costs of the action. Neither Wang nor Ho contested the action. Ho answered the petition and argued (1) that the guaranty was not effective because a condition precedent had not been satisfied; and (2) that IPC was not entitled to accelerated rent after evicting the tenant. Ho also cross-claimed against Wang and Oriental Gardens and asked the court for an order of exoneration in which Wang and Oriental Gardens would be required to immediately pay Ho for any judgment entered in favor of IPC. The evidence revealed that Wang and Ho had executed a stock and asset sale agreement in which Wang agreed to indemnify Ho for any losses arising from his personal liability on this lease.

The trial court conducted a bench trial on these issues. The trial court found that the guaranty was effective and that the acceleration provision was enforceable for past and future rents. Judgment was entered in favor of IPC and against Ho, Wang, and Oriental Gardens for $388,006.21, which consisted of overdue rent payments as well as acceleration of future rent payments. The trial court rejected Ho's exoneration claim and instead ordered Wang to indemnify Ho for any payments made to IPC. The trial court further noted that it was concerned about the issue of mitigation. As a result, all rents received by IPC from a future tenant of the premises within the term of the lease would be credited against the judgment.

### Condition Precedent of the Guaranty

Ho first argues that the guaranty incorporated a condition precedent which required the signatures of Ho, Wang, and their spouses before it became effective. Ho asserts that because the spouses never signed the guaranty, the condition precedent was not met and the guaranty never became effective.

"The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001). Whether a written instrument is ambiguous is a matter of law subject to de novo review. *Investcorp, L.P. v. Simpson Investment Co., L.C.*, 267 Kan. 840, 847, 983 P.2d 265 (1999).

In addressing this issue at the regular hearing, the trial court stated:

"I'm going to find that there is no ambiguity with respect to the requirements of signatures by the parties listed, the persons listed. The persons listed are Mr. Wang and Mr. Ho. The instructional statement—let me refer to it specifically. In 101—1.01K of Article I of the lease does not list the spouses by name, and the language used is not sufficient to list them by general description or by category."

The trial court correctly analyzed the language in the lease. Paragraph 20.17 of the lease provides: "This Lease shall not be effective unless the persons, if any, listed in Paragraph 1.01K hereof shall execute the Guaranty of this Lease attached as Exhibit E." Paragraph 1.01K only lists Ho and Wang as guarantors. Although Paragraph 1.01K also stated: "Include spouses of individual guarantors; all Guarantors must sign Exhibit E)," this statement amounted to a parenthetical note and did not sufficiently list the spouses as persons who were required to sign the guaranty under Paragraph 20.17. In addition, there was no evidence on the guaranty document that the signature of Ho's spouse was required. Instead, the guaranty had only two signature lines which were designated for Ho and Wang. As a result, the spouses of Ho and Wang were not required to sign the guaranty before it became effective.

### Interpretation of Acceleration Clause

Ho next contends that this court should construe the acceleration clause to apply only where the landlord does not terminate the lease and sue to regain possession.

Because Ho raises an issue regarding the interpretation of a written instrument, this court's review is unlimited. See *Mark Twain*

*Kansas City Bank v. Cates*, 248 Kan. 700, 704, 810 P.2d 1154 (1991). When interpreting a written instrument, the primary rule is to ascertain the intent of the parties. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998). "As a general rule, if the language of the written instrument is clear, there is no room for rules of construction." 265 Kan. at 324.

The acceleration clause is found in Paragraph 15.02 of the lease and states:

"Upon the occurrence of any event of default set forth in Paragraph 15.01, Landlord shall have the following rights and remedies, in addition to those allowed by law or equity, any one or more of which may be exercised without further notice to or demand upon Tenant:

. . . .

"B. Landlord may terminate this Lease as of the date of such default. Upon termination, Tenant or any party leasing the Premises through Tenant, shall immediately surrender the Premises to Landlord. Landlord may re-enter the Premises and dispossess Tenant or any other occupants of the Premises by force, summary proceedings, ejectment or otherwise, and may remove their effects, without prejudice to any other remedy which Landlord may have for possession or arrearage in rent. In addition, Landlord may declare all past, present and future rent payments under this Lease to be immediately due and payable. Landlord may re-let all or part of the Premises to another party on terms and conditions which may vary from the terms of this Lease. Tenant shall be obligated to pay to Landlord the difference between the rent provided for in such subsequent lease and the rent provided for in this Lease. No matter which remedy Landlord chooses in its sole discretion, Tenant shall be liable for all costs and expenses caused by Tenant's default and Landlord's re-entry and re-letting, including but not limited to, all repairs, improvements, brokers' and attorneys' fees."

Contrary to Ho's contention, the clear language of Paragraph 15.02(B) allows IPC to seek the remedies of both termination of the lease and acceleration of past, present, and future rent payments. The phrase "in addition" reveals that acceleration of future rent can be a remedy of the landlord along with termination of the contract and possession of the property. While Ho raises several other arguments as to why these remedies should be mutually exclusive, these arguments do not relate to the construction of the lease provisions and will be discussed in the next issue.

*Validity of Rent Acceleration Provision*

Ho next argues that a landlord cannot both terminate a lease and accelerate rent. To support his position, Ho cites to the Restatement (Second) of Property § 12.1, comment k, which provides that a landlord cannot collect accelerated rents for the period after the lease is terminated. Ho also points to other jurisdictions in which the courts have determined that acceleration clauses are unenforceable when the landlord is given the right to immediate possession of the premises.' See *Geiger Mutual Agency, Inc. v. Wright*, 233 So. 2d 444, 447 (Fla. Dist. App. 1970); *Peterson v. P.C. Towers, L.P.*, 206 Ga. App. 591, 594, 426 S.E.2d 243 (1992).

Kansas case law, however, has not expressly adopted the Restatement's position or determined that acceleration clauses are unenforceable when the landlord is given the immediate right to possession of the premises. Our review of Kansas case law reveals only one case, *Erickson v. O'Leary*, 127 Kan. 12, 273 Pac. 414 (1929), which involved an accelerated rent provision. Although the facts of that case involved a tenant who abandoned the lease, there is some indication from *Erickson* that a landlord can collect accelerated rent even after the tenant's interest has been terminated and the landlord has regained possession of the premises. See 127 Kan. at 14.

Nevertheless, IPC seems to have treated Oriental Gardens' refusal to pay rent as an anticipatory breach of contract. Therefore, IPC had the option to treat the lease agreement as ended so far as further performance was concerned and to sue at once for the breach. See *Wilson v. National Refining Co.*, 126 Kan. 139, Syl. ¶ 1, 266 Pac. 941 (1928). As discussed later in our opinion, IPC was entitled to recover the anticipated damages for the remainder of the lease term based on Oriental Garden's breach of the contract. Therefore, Ho's argument fails.

*Accelerated Rent Provision as Liquidated Damages Clause*

The trial court awarded $388,006.21 to IPC based on the acceleration provision of the lease. Ho contends that this accelerated rent provision was in the nature of an unenforceable penalty. On

the other hand, IPC asserts that the accelerated rent provision constituted a valid liquidated damages clause.

The propriety of liquidated damages is a question of law over which this court's review is unlimited. *Luminous Neon, Inc. v. Parscale*, 17 Kan. App. 2d 241, 242, 836 P.2d 1201 (1992).

It is well established that parties to a contract may stipulate to a set damages amount for breach of the contract as long as the provision constitutes a liquidated damages clause and not a penalty. *U.S.D. No. 315 v. DeWerff*, 6 Kan. App. 2d 77, 78, 626 P.2d 1206 (1981). " 'The distinction between a penalty and a provision for liquidated damages is that a penalty is in effect a security for performance, while a provision for liquidated damages is for a sum to be paid in lieu of performance.' " *Erickson v. O'Leary*, 127 Kan. at 14. The burden of proving that a liquidated damages clause constitutes an unenforceable penalty rests with the party challenging the provision. *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 250, 898 P.2d 1145 (1995).

When determining whether a stipulated damages amount constitutes a liquidated damages clause or an unenforceable penalty, our Supreme Court has stated:

" 'The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damages resulting from default would not be easily and readily determinable.' " *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d at 250 (quoting *Beck v. Megli*, 153 Kan. 721, 726, 114 P.2d 305 [1941]).

Ho argues that the accelerated rent provision constituted an unenforceable penalty because it applied to all breaches of the contract. Ho points out that IPC could enforce the accelerated rent provision for breaches that would result in nominal damage such as painting an unauthorized sign, holding a sidewalk sale, using a loudspeaker, or failing to conduct business in an energetic manner. Ho contends that such a broad acceleration clause is an unenfor-

ceable penalty because it bears no reasonable relationship to the types of breaches to which it may be applied and because actual damages for some of the breaches to which it may be applied are not difficult to ascertain.

The accelerated rent provision provided that IPC could "declare all past, present and future payments under this Lease to be immediately due and payable." If Oriental Gardens failed to perform any of the obligations under the lease other than the payment of rent, IPC was required to first give Oriental Gardens 30 days to correct the problem before terminating the contract. As pointed out by Ho, this provision allowed IPC to terminate the lease and collect the entire balance of the rent due under the contract even for minor breaches. Although IPC was required to give Oriental Gardens 30 days to correct the breach if it resulted from anything other than nonpayment of rent, IPC could enforce the acceleration clause if the breach continued beyond the 30-day time period after notice from IPC. Therefore, IPC was allowed to terminate the contract and accelerate rent for minor breaches such as holding a sidewalk sale or failing to conduct business in an energetic manner.

The fact that the accelerated rent provision under the contract could be invoked for all breaches, however minute or unimportant, renders this provision an unenforceable penalty under the standard set forth above. We have previously stated that "a contract provision will be considered a penalty where there is no attempt to calculate the amount of actual damages that might be sustained in case of breach. [Citation omitted.]" *U.S.D. No. 315 v. DeWerff*, 6 Kan. App. 2d at 80. When the amount of damages is the same for breach of a major or minor contract provision, or for a total or partial breach, it becomes evident that the parties did not attempt to calculate actual damages. *U.S.D. No. 315 v. DeWerff*, 6 Kan. App. 2d at 80; see *Condon v. Kemper*, 47 Kan. 126, 27 Pac. 829 (1891). Because the acceleration clause in this case applied whenever there was a major or minor breach of Oriental Garden's obligations under the lease, there was no attempt to calculate the actual amount of damages that might be sustained. As a result, the acceleration clause constituted an unenforceable penalty.

This determination is in accord with case law from other jurisdictions that have found a so-called liquidated damages provision to be an unenforceable penalty. For example, the New York Supreme Court has determined that a liquidated damages clause which applies to a number of covenants is an unenforceable penalty "if the loss which might be anticipated as resulting from a breach of even the least important of them is disproportionate to the amount of liquidated damages, or if the loss which might result from a breach of any one of the covenants is readily ascertainable." *Vernitron Corp. v. CF 48 Associates*, 104 App. Div. 2d 409, 410, 478 N.Y.S.2d 933 (1984); see *Jolley v. Georgeff*, 92 Ohio App. 271, 110 N.E.2d 23 (1952); 49 Am. Jur. 2d, Landlord and Tenant § 717 (courts in general are inclined to find stipulation for immediate payment of all future rent in case of forfeiture by lessee and reentry as unenforceable penalty in any case where stipulation that in case of forfeiture and reentry lessee should pay full amount of unaccrued rent as damages).

Furthermore, the language found in the termination clause here reveals that the parties did not intend for the accelerated rent provision to be a liquidated damages clause. The termination clause under the lease here allowed IPC to collect actual damages in addition to accelerated rent. The rent acceleration provision stated that the landlord could declare all past, present, and future rent payments immediately due and payable. In spite of this amount, the tenant was still liable for all costs and expenses caused by the breach. This was not in the nature of a liquidated damages clause. A liquidated damages clause is an advance settlement of the anticipated actual damages from a future breach. *Railroad Co. v. Gaba*, 78 Kan. 432, 435-36, 97 Pac. 435 (1908). This type of provision allows the parties "to protect themselves against the difficulty, uncertainty, and expense which necessarily is a consequence of judicial proceedings for the ascertainment of the damages." 49 Am. Jur. 2d, Landlord and Tenant § 123, p. 140. Because the lease allowed IPC to collect future rent as well as actual damages, the accelerated rent provision was in the nature of an unenforceable penalty. Such a provision does not constitute a settlement and allows the landlord to "have his cake and eat it too." See *Dalston*

*Constr. Corp. v. Wallace,* 26 Misc. 2d 698, 214 N.Y.S.2d 191 (1960) (finding that clause which fixes minimum amount to be paid and then leaves door wide open to prove actual damages is not valid liquidated damages clause).

We are aware that some jurisdictions have upheld an accelerated rent provision as a valid liquidated damages clause. See *Watts Bldg. v. Schoel, Ogle, et al.,* 598 So. 2d 832 (Ala. 1992); *Aurora Business Park v. Albert, Inc.,* 548 N.W.2d 153, 157 (Iowa 1996). Nevertheless, under the law of this jurisdiction and the facts of this case, we are unable to reach such a result.

In summary, to recover under a liquidated damages clause, the amount of liquidated damages must bear some reasonable relationship to the actual injury caused by the breach. If such amount bears no such relationship, it is a penalty and void.

Because the acceleration provision at issue in this case applied to every breach of the lease, we find that such a provision does not meet the standard for a liquidated damages clause. Specifically, the provision was not a reasonable estimate of damages and applied to breaches where damages could be easily ascertained. In addition, the terms of the lease indicate that the parties did not intend to liquidate their damages. As a result, we conclude that the accelerated rent provision was an unenforceable penalty.

*Damages*

Citing *Cunningham v. Stockton,* 81 Kan. 780, 106 Pac. 1057 (1910), Ho maintains that once IPC terminated the lease, IPC was foreclosed from seeking any future rents from Oriental Gardens. Ho asserts that *Cunningham* limits IPC's recovery to accrued rents owed at the time the lease was terminated. We disagree. When IPC terminated the lease, IPC clearly stated that it was not releasing Oriental Gardens from its obligation to pay rent under the lease. In its letter to Oriental Gardens, IPC explained that Oriental Gardens' duty to pay rent continued after the termination of the lease. Although the leasehold estate between IPC and Oriental Gardens ended, the contract remained alive between the two parties for the purpose of measuring damages. As a result, IPC's claim for the remaining amount due under the contract was one for dam-

ages rather than for rent. See *Lips v. Opp*, 150 Kan. 745, 748, 96 P.2d 865 (1939) ("In an ordinary lease where the lessee repudiates or abandons his lease the measure of the lessor's damages for the breach of contract is the difference between the rent stipulated in the lease and the sum for which the premises are rented to other parties for the remainder of the term.").

On remand, the trial court should reconsider the issue of damages. Because IPC has relet the premises in the interim, the proper measure of damages is the difference, reduced to present value, between the rent fixed in the lease and the sum for which the premises are rented to other parties for the remainder of the term.

Reversed and remanded.